**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000656
31-JUL-2014
08:45 AM**

CAAP-12-0000656

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JOAN SIMENTAL, Plaintiff-Appellee,
v.
JORGE SIMENTAL, Defendant-Appellant.


APPEAL FROM THE FAMILY COURT OF THE FIFTH CIRCUIT
(FC-D NO. 08-1-0094)


MEMORANDUM OPINION
(By: Nakamura, C.J., and Foley and Leonard, JJ.)


In this post-divorce decree appeal, Defendant-Appellant Jorge Simental (Father) appeals from the Amended Judgment filed on June 26, 2012, in the Family Court for the Fifth Circuit (Family Court).[1] Father and Plaintiff-Appellee Joan Simental (Mother) were divorced pursuant to a "Decree Granting Divorce and Awarding Child Custody" (Divorce Decree) entered by the Family Court on July 24, 2008.

Father's primary argument on appeal is that the Family Court erred in granting post-decree relief in favor of Mother for amounts Mother claimed Father owed under the Divorce Decree, because the Family Court did not have jurisdiction to hear

---

[1] The Honorable Edmund D. Acoba presided.

Mother's post-decree motion. Father asserts that pursuant to Hawaii Revised Statutes (HRS) § 576B-205 (2006), which is part of the Uniform Interstate Family Support Act (UIFSA) adopted by Hawai'i, the Family Court was divested of jurisdiction to decide Mother's post-decree motion by the entry of an Oklahoma court order that modified child custody and support provisions of the Divorce Decree. Father also argues that the Family Court erred in entering judgment against his business entities which were not parties to the divorce proceedings. Mother did not file an Answering Brief in this appeal.

As explained below, we conclude that the Oklahoma court order was not entered in compliance with the UIFSA and did not divest the Family Court of jurisdiction to decide Mother's post-decree motion. We further conclude that the Family Court erred in entering judgment against Father's business entities. We vacate the portion of the Family Court's Amended Judgment that entered judgment against Father's business entities, and we affirm the Amended Judgment in all other respects.

BACKGROUND

I.

Mother and Father were married in Texas in May 2000, and have two children together, Daughter born in 1996, and Son born in 2001. On May 27, 2008, Mother filed her Complaint for Divorce in the Family Court seeking dissolution of the marriage, custody of the children, and child support. Mother filed an affidavit on July 14, 2008, asserting that she had resided on Kaua'i for one year and eight months immediately prior to the filing the Complaint for Divorce and that Father resided on Kaua'i. Father had lived and worked in Hawai'i prior to the commencement of the divorce proceedings. Father, however, asserted that he was a "resident or domiciliary of the State of Oklahoma during the course of all divorce proceedings filed in Hawaii[.]" In any event, Father filed an "Appearance and Waiver," thereby submitting himself to the jurisdiction of the

2

Family Court and waiving his presence at the hearing on the Complaint for Divorce.

On July 24, 2008, the Family Court entered the Divorce Decree, which, among other things, (1) dissolved the parties' marriage; (2) granted Mother physical custody of both children; (3) awarded Mother $3,250 per child per month in child support; and (4) ordered Father to (a) pay a portion of the premiums on Mother's medical insurance plan until July 1, 2009, maintain medical insurance coverage for the children after July 1, 2009, and pay half of the children's health care expenses not covered by insurance, (b) pay $100 per month per child into post-high school educational funds for the children, and (c) maintain life insurance and disability insurance policies for the benefit of the children. The Divorce Decree also divided the parties' property, required Father to make cash payments to Mother, and held Father responsible for the payment of the parties' outstanding tax liabilities. Finally, under paragraph 28 of the Divorce Decree, the Family Court retained "jurisdiction of the parties and all of the property, both real and personal, until complete fulfillment of the provisions of this Divorce Decree."

II.

A.

Shortly after entry of the Divorce Decree, Father defaulted on his obligations thereunder. On November 10, 2008, Mother filed a "Motion and Affidavit for Order to Show Cause for Relief After Order or Decree," seeking various amounts owed by Father under the Divorce Decree, including amounts owed for child support, medical insurance premiums, medical expenses, contributions to post-high school education funds, tax liabilities and liens, and cash payments. On February 17, 2009, the Family Court entered a Judgment in favor of Mother and against Father in the amount of $122,686.73. On July 29, 2009, the Family Court issued an order (July 2009 Order), which ordered

3

that the Judgment be amended to reduce the amount owed by Father to $72,242.78.[2]

### B.

Father at some point relocated from Hawai'i and became a resident of Oklahoma. On August 26, 2009, Father assumed the duties associated with full custody of Daughter with Mother's consent. At that time, Mother was a resident of Texas and maintained physical custody of Son. Mother and Son later relocated to California.

Father filed in the District Court in and for Delaware County, State of Oklahoma (Oklahoma District Court) (1) an "Application for Registration of Foreign Decree", which sought the registration of the Hawai'i Divorce Decree; and (2) a "Motion to Modify Decree of Divorce", which sought to modify the Divorce Decree to reflect Father's physical custody of Daughter. On October 9, 2009, the Oklahoma District Court entered an "Order Modifying Decree of Divorce" (Modification Order). In the Modification Order, the Oklahoma District Court determined that Father is a resident of Oklahoma and Mother is a resident of Texas, and it stated that it "will assume jurisdiction over the parties and the subject matter and minor children of the parties." The Modification Order modified the Divorce Decree with respect to the parties' rights and obligations regarding child custody and child support to reflect Father's assumption of physical custody of Daughter.[3]

### III.

On February 29, 2012, Mother filed a "Motion and Affidavit for Order to Show Cause for Relief After Order or Decree, for Sanctions, and an Award of Attorney's Fees and Costs"

---

[2] Although the July 2009 Order directed the entry of an amended judgment to reflect the reduction in the amount owed by Father to $72,242.78, the record reveals that no corresponding amended judgment was entered.

[3] For example, under the Modification Order, Father was no longer required to pay child support to Mother for Daughter. The parties' visitation rights were also modified to reflect the new custody arrangement.

(Post-Decree Motion) in the Family Court. Mother's Post-Decree Motion sought the entry of judgment against Father for various amounts, including amounts Father owed: (1) under the July 2009 Order; (2) for payments Mother made on the parties' tax liabilities which were assigned to Father in the Divorce Decree; (3) for Father's failure to pay his share of the children's medical and dental expenses and to pay into the children's education funds during the period after the July 2009 Order; and (4) for payments Mother made to maintain life and disability insurance on Father which Father was required to maintain under the Divorce Decree.

On May 4, 2012, Father filed a Motion to Dismiss, challenging the Family Court's jurisdiction to hear Mother's Post-Decree Motion. Father argued that pursuant to HRS § 576B-205, the Family Court was divested of jurisdiction to decide Mother's Post-Decree Motion and enforce the Divorce Decree because the parties no longer lived in Hawai'i and the Oklahoma District Court had modified the Divorce Decree.

On June 26, 2012, the Family Court entered its "Findings of Fact; Conclusions of Law; Order Denying Defendant's Motion to Dismiss" (Order Denying Father's Motion to Dismiss) and its "Order Granting Plaintiff's [Post-Decree Motion]" (Order Granting Mother's Post-Decree Motion). In the Order Denying Father's Motion to Dismiss, the Family Court determined that it had jurisdiction to decide Mother's Post-Decree Motion, concluding as follows:

> 1. Father waived his objection to this Court's personal jurisdiction over him when he executed the Appearance and Waiver and Divorce Decree.
>
> 2. Father again waived his objection to this Court's personal jurisdiction over him when he and his attorney without objection repeatedly appeared in this Court as to enforcement issues arising from the parties' Divorce Decree.
>
> 3. This Court has personal jurisdiction over Father to enforce the terms of the parties' Divorce Decree.
>
> 4. Although the Oklahoma Court has assumed subject matter jurisdiction over the issue of [Daughter's] custody and Father's monthly child support obligation, [Hawaii

Revised Statutes (HRS)] 576B-205 does not divest this Court of its authority to enforce the remaining terms of the parties' Divorce Decree.

5. HRS 580-56(d) (2006) confers upon this Court jurisdiction to enforce the financial terms of the parties' Divorce Decree, other than Father's monthly child support obligation.

(Citations omitted.) Based on these conclusions, the Family Court denied Father's Motion to Dismiss.

In its Order Granting Mother's Post-Decree Motion, the Family Court determined that Father owed Mother $122,689.25 for the following:

1. The balance owed by [Father] to [Mother] on the [July 2009 Order] is $72,242.78.

2. The Court finds that [Father] has failed to make additional payments previously required of him by the terms of the parties' Divorce Decree . . . and the [July 2009 Order] as follows:

a) the parties' children's post high school educational fund in the amount of $6,000.00 through January 2012 (paragraph 8 of [the Divorce] Decree and paragraph 12 of [the July 2009 Order),

b) his life insurance premiums in the amount of $4,751.28 through January 2012 (paragraph 11 of [the Divorce] Decree),

3. The Court further finds that [Father] shall be held responsible for payment to [Mother] of the following:

a) [Mother's] attorney's fees incurred in enforcing [Father's] delinquency under the June 12, 2009 Order in the amount of $1,030.12 to Attorney Richard DeJana & Associates,

b) the 2007 federal tax lien in the amount of $27,385.56 (paragraph 19.b of [the Divorce] Decree) paid by [Mother],

c) the 2007 state tax lien in the amount of $15,319.04 (paragraph 19.g of [the Divorce] Decree) paid by [Mother],

d) amount of accrued interest from 6/15/09 through 5/16/12 in the amount of $17,959.83 arising from paragraph 12 of the [July 2009 Order] as reflected on Exhibit "A" attached hereto.

e) [Mother's] attorney's fees and costs in the amount of $2,829.55 incurred in the bringing of [Mother's Post-Decree Motion].

> 4. The total amount owing from [Father] to [Mother] as stated above is $122,689.25.

The Family Court's Order Granting Mother's Post-Decree Motion also determined that:

> 5. [Father] . . . uses various business entities, Enthalpy Health Associates, Simental Ventures, LLC, Summit Station Lodge, LLC, Northern Montana Emergency Physicians, LLC, and Simental Venture Capital, LLC, and the Amended Judgment shall reflect these alter egos.

Pursuant to its Order Granting Mother's Post-Decree Motion, the Family Court entered its Amended Judgment on June 26, 2012, which amended the Judgment entered February 17, 2009, and the July 2009 Order to reflect the updated amounts owed to Mother by Father. In addition to entering judgment against Father, the Amended Judgment entered judgment against Father's business entities that were identified in the Order Granting Mother's Post-Decree Motion. Father timely appealed from the Amended Judgment.

## DISCUSSION

### I.

While Father asserts various points of error on appeal, his primary argument is that the Family Court lacked jurisdiction to decide Mother's Post-Decree Motion. We review Father's challenge to the Family Court's jurisdiction *de novo*. See Lingle v. Hawai'i Gov't Employees Ass'n, AFSCME, Local 152, AFL-CIO, 107 Hawai'i 178, 182, 111 P.3d 587, 591 (2005).

Father's argument that the Family Court lacked jurisdiction is based on the UIFSA, which Hawai'i adopted in 1997 and is codified in HRS Chapter 576B. The premise of Father's argument is that the Modification Order issued by the Oklahoma District Court on October 9, 2009, divested the Hawai'i Family Court of jurisdiction to decide Mother's Post-Decree Motion, which involved child support issues. However, as explained below, under the UIFSA, even a modification by the Oklahoma District Court of the Family Court's child support order that complied with the UIFSA would not divest the Family Court of

7

jurisdiction (1) to enforce its order as to amounts accruing before the modification or (2) to provide relief for violations of its order occurring before the modification's effective date. Moreover, in this case, the October 9, 2009, Modification Order of the Oklahoma District Court was not issued in compliance with the requirements of the UIFSA, and the Modification Order did not serve to divest the Hawai'i Family Court of jurisdiction to decide Mother's Post-Decree Motion regarding amounts accruing after October 9, 2009.

### A.

"The [UIFSA], which has been adopted by all states, governs the procedure for establishing, enforcing, and modifying child and spousal support orders and for determining parentage when more than one state is involved in these proceedings." Kurtis A. Kemper, Annotation, Construction and Application of Uniform Interstate Family Support Act, 90 A.L.R.5th 1 (2001).  As noted, Hawai'i adopted the UIFSA in 1997.  Oklahoma adopted the UIFSA in 1994.  See Okla. Stat. Ann. tit. 43, §§ 601-100 et. seq.; Hanger v. Hanger, 274 P.3d 820, 829 (Okla. Civ. App. 2011). "The primary purpose of UIFSA was to eliminate multiple and inconsistent support orders by establishing a principle of having only one controlling order in effect at any one time." Jurado v. Brashear, 782 So.2d 575, 578 (La. 2001).

### B.

As he did in his Motion to Dismiss, Father relies on appeal upon the provision of the UIFSA set forth in HRS § 576B-205 to argue that the Modification Order of the Oklahoma District Court divested the Family Court of jurisdiction to decide Mother's Post-Decree Motion.  HRS § 576B-205 provides in relevant part:

> **Continuing, exclusive jurisdiction.**  (a) A tribunal of this State issuing a support order consistent with the law of this State has continuing, exclusive jurisdiction over a child support order:
>
> > (1)  As long as this State remains the residence of the obligor, the individual obligee, or the

child for whose benefit the support order is issued; or

(2) Until all of the parties who are individuals have filed written consents with the tribunal of this State for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

(b) A tribunal of this State issuing a child support order consistent with the law of this State may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state pursuant to this chapter or a law substantially similar to this chapter.

(c) If a child support order of this State is modified by a tribunal of another state pursuant to this chapter or a law substantially similar to this chapter, a tribunal of this State loses its continuing, exclusive jurisdiction with regard to prospective enforcement of the order issued in this State, and may only:

(1) Enforce the order that was modified as to amounts accruing before the modification;

(2) Enforce nonmodifiable aspects of that order; and

(3) Provide other appropriate relief for violations of that order which occurred before the effective date of the modification.

(d) A tribunal of this State shall recognize the continuing, exclusive jurisdiction of a tribunal of another state which has issued a child support order pursuant to this chapter or a law substantially similar to this chapter.

(Emphases added.)

C.

Father's claim that the October 9, 2009, Modification Order issued by the Oklahoma District Court divested the Family Court of jurisdiction to decide Mother's Post-Decree Motion is without merit. Prior to the entry of the October 9, 2009, Modification Order, Father, Mother, and their children no longer resided in Hawai'i. Therefore, the Hawai'i Family Court had lost continuing, exclusive jurisdiction over its child support order, and it could not exercise jurisdiction to modify its child support order. HRS § 576B-205(a), (b); see Douglas v. Brittlebank-Douglas, 98 Hawai'i 168, 174, 45 P.3d 368, 374 (App. 2002). Although the Family Court lost its authority to modify its child support order, it did not lose its authority to enforce the order. Douglas, 98 Hawai'i at 174, 45 P.3d at 374.

Under HRS § 576B-205(c), the modification of the Family Court's child support order by a tribunal of another state would not prevent the Family Court from enforcing its order as to amounts accruing before the modification or from providing relief for violations of the order occurring before the effective date of the modification. In addition, the Family Court would only lose its continuing jurisdiction to prospectively enforce its child support order if the order's modification by a tribunal of another state is done "pursuant to [the UIFSA (HRS Chapter 576)] or a law substantially similar to [the UIFSA]." HRS § 576B-205(c). In other words, the modification by the tribunal of another state must comply with the UIFSA in order for the Family Court to be divested of jurisdiction to prospectively enforce its child support order.

The UIFSA only permits a state to modify a child support order issued by another state under very narrow conditions. HRS 576B-611(a) (2006) provides, in relevant part:

> **Modification of child support order of another state.**
> (a) After a child support order issued in another state has been registered in this State, the responding tribunal of this State may modify that order only if section 576B-613[4/] does not apply and after notice and hearing it finds that:
>
>     (1)    The following requirements are met:
>
>         (A)    The child, the individual obligee, and the obligor do not reside in the issuing state;
>
>         (B)    <u>A petitioner who is a nonresident of this State seeks modification</u>; and
>
>         (C)    The respondent is subject to the personal jurisdiction of the tribunal of this State; or
>
>     (2) The child, or a party who is an individual, is subject to the personal jurisdiction of the tribunal of this State and all of the parties who are individuals have filed

---

4/ HRS § 567B-613 (2006), which does not apply in this case, provides in relevant part: "If all of the parties who are individuals reside in this State and the child does not reside in the issuing state, a tribunal of this State has jurisdiction to enforce and to modify the issuing state's child support order in a proceeding to register that order."

> written consents in the issuing tribunal for a tribunal of this State to modify the support order and assume continuing, exclusive jurisdiction over the order.

(Emphasis added.) Oklahoma has a enacted a provision, Okla. Stat. Ann. tit. 43, § 601-611(A), that is substantively the same as HRS § 576B-611(a).

The Official Comment to the UIFSA that corresponds with HRS § 567B-611 explains the policy behind the restrictions imposed on permitting a tribunal to modify an existing child support order of another state as follows:

> Under UIFSA a tribunal may modify an existing child support order of another state only if certain quite limited conditions are met. First, the tribunal must have all the prerequisites for the exercise of personal jurisdiction required for rendition of an original support order. Second, one of the restricted fact situations described in Subsection (a) must be present. . . .
>
> Under Subsection (a)(1), the individual parties affected by the initial order must have moved from the issuing state before a tribunal in a new forum may modify. . . .
>
> The policies underlying the change affected by Subsection (a)(1) contemplate that the issuing state has lost continuing, exclusive jurisdiction and that the obligee may seek modification in the obligor's state of residence, or that the obligor may seek a modification in the obligee's state of residence. This restriction attempts to achieve a rough justice between the parties in the majority of cases by preventing a litigant from choosing to seek modification in a local tribunal to the marked disadvantage of the other party. For example, an obligor visiting the children at the residence of the obligee cannot be validly served with citation accompanied by a motion to modify the support order. Even though such personal service of the obligor in the obligee's home state is consistent with the jurisdictional requisites of Burnham v. Superior Court, 495 U.S. 604 (1990), the motion to modify does not fulfill the requirement of being brought by "a [petitioner] who is a nonresident of this State. . . ." In short, the obligee is required to register the existing order and seek modification of that order in a state which has personal jurisdiction over the obligor other than the state of the obligee's residence. Most typically this will be the state of residence of the obligor. Similarly, fairness requires that an obligee seeking to modify or modify and enforce the existing order in the state of residence of the obligor will not be subject to a cross-motion to modify custody or visitation merely because the issuing state has lost its continuing, exclusive jurisdiction over the support order. The obligor is required to make that motion in a state other than that of his or her residence; most likely, the obligee's state of residence.

UIFSA § 611 cmt. (1996) (brackets in original; emphasis added).

11

D.

Father was a resident of Oklahoma and Mother was a resident of Texas, when Father, as the petitioner, filed a motion to modify the Divorce Decree, including the Family Court's child support order, in Oklahoma District Court. Because Father was a resident of Oklahoma, he did not satisfy the condition set forth in HRS § 567B-611(a)(1)(B) (or the parallel Oklahoma provision, Okla. Stat. Ann. tit. 43, § 601-611(A)(1)(b)) of being "[a] petitioner who is a nonresident" of the state in which the modification is sought.[5] In addition, the requirements imposed by HRS § 567B-611(a)(2) and Okla. Stat. Ann. tit. 43, § 601-611(A)(2) were not satisfied because Mother and Father did not file written consents in the Family Court permitting the Oklahoma District Court to modify the Family Court's child support order. Therefore, the Modification Order issued by the Oklahoma District Court was not in compliance with or pursuant to Hawai'i's version of the UIFSA, HRS Chapter 567B, or a law substantially similar to HRS Chapter 576B. See HRS § 576B-205(c). Accordingly, the Modification Order did not serve to divest the Family Court of jurisdiction to prospectively enforce its child support order or to decide Mother's Post-Decree Motion.

Based on the foregoing, we conclude that there was no jurisdictional impediment to the Family Court's determination that Father owed Mother amounts under the Divorce Decree and the July 2009 order. We therefore reject Father's primary challenge to the Amended Judgment, which was based on his claim that the Family Court lacked jurisdiction to decide Mother's Post-Decree Motion. Father does not show that the Family Court erred in determining the amounts that he owed to Mother under the Divorce

_____

[5] We note that courts from other jurisdictions have split on the question of whether the Full Faith and Credit for Child Support Orders Act (FFCCSOA), 28 U.S.C. § 1738B, preempts the UIFSA with respect to the UIFSA's requirement that the petitioner for modification of a child support order be a non-resident. See OSC/Glenn Pappas v. O'Brien, 67 A.3d 916, 923 n.4 (Vt. 2013). However, Father did not raise the preemption issue and we do not address it.

12

Decree and the July 2009 Order, which the Family Court determined totaled $122,689.25. We therefore affirm the Family Court's entry of judgment in favor of Mother and against Father in the amount of $122,689.25.

II.

Father argues that the Family Court erred in entering judgment against his business entities which were not parties to the divorce proceedings. We agree.

Father's business entities were corporations. "It is well settled that establishing a corporation to limit personal liability is proper and is, alone, an insufficient basis for the application of the doctrines of alter ego or piercing the corporate veil." Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transp., 91 Hawai'i 224, 240, 982 P.2d 853, 869 (1999). The alter ego doctrine had been used to disregard the corporation as a distinct legal entity "only where recognition of the corporate fiction would bring about injustice and inequity or when there is evidence that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim." Chung v. Animal Clinic, Inc., 63 Haw. 642, 645, 636 P.2d 721, 723 (1981). The rationale behind the alter ego doctrine is that, "if the shareholders or the corporations themselves disregard the proper formalities of a corporation, then the law will do likewise as necessary to protect individual and corporate creditors." Robert's Hawaii School Bus, 91 Hawai'i at 241, 982 P.2d at 870 (block quote format and citation omitted). Courts apply the alter ego doctrine "with great caution and reluctance," id. (block quote format and citation omitted), and "Hawai'i courts have been reluctant to disregard the corporate entity." Id. at 241 n.12, 982 P.2d at 870 n.12.

In this case, the Family Court directed the entry of judgment against Father's business entities as Father's alter egos. However, the evidence presented by Mother on the alter ego doctrine was sparse and conclusory. Mother's testimony only showed that the business entities, in which Father was "one

13

hundred percent involved with," made it difficult for Mother to collect from Father, and that Mother believed Father's purpose in using these entities "for the most part" was "to avoid responsibility for [the prior] judgment." Mother did not present evidence that Father had disregarded corporate formalities; that the "recognition of the corporate fiction would bring about injustice and inequity"; or that Father used the corporate form for his business entities "to perpetrate a fraud or defeat a rightful claim." See Chung, 63 Haw. at 645, 636 P.2d at 723; Robert's Hawaii School Bus, 91 Hawai'i at 241, 982 P.2d at 870. We conclude that there was insufficient evidence to support the Family Court's application of the alter ego doctrine and that the Family Court erred in entering judgment against Father's business entities.

## CONCLUSION

For the foregoing reasons, we vacate the portion of the Family Court's Amended Judgment that entered judgment against Father's business entities, and we affirm the Amended Judgment in all other respects.

DATED: Honolulu, Hawai'i, July 31, 2014.

On the briefs:

R. Steven Geshell
for Defendant-Appellant

Chief Judge

Associate Judge

Associate Judge